# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1878.

[No. 5773.]

## A. M. W. DE TEMPLE v. D. W. ALEXANDER.

REPLEVIN — RELEASE OF SHERIFF BY STIPULATION.—Where an action of re-
plevin is brought to recover property in the possession of a Sheriff under
attachment, and the parties stipulate that the property shall be turned over
to a third party to await the final judgment in the cause, the Sheriff is
released from all liability, and a judgment *in form* only can be taken against
him.

SUBSTITUTION OF PARTY PLAINTIFF.—Where the plaintiff brought suit in re-
plevin as the mother of the real parties in interest, asserting no right in
herself, and subsequently the children, by their guardian *ad litem*, filed
a complaint setting up the same cause of action, the subsequent appearance
was not an intervention, but merely a substitution; and a stipulation made
by the first plaintiff will bind the second.

APPEAL from the District Court of the Seventeenth Judi-
cial District, Los Angeles County.

The plaintiff, on May 10th, 1876, filed a complaint, alleging
that on the 28th of April, 1876, John Temple, a minor of the
age of twenty years, the son of the plaintiff, was the owner of
ninety head of cattle, of the value of $3,000, and that the
plaintiff then had the property in her possession, " as the mother
of said John Temple, taking care of the same for said John."

That at the same time and place, one Lucinda Temple, a daughter of said plaintiff, a minor of the age of sixteen years, was the owner of about 230 head of horned cattle, "of the value of $10,000, and that the plaintiff then and there, at the same time and place, was in the possession of the cattle," as the mother of said Lucinda Temple, taking care of the same for said Lucinda. The complaint further alleged that the defendant, Alexander, as Sheriff, pretending to act by virtue of a certain writ of attachment, issued at the suit of *A. B. de Baker* v. *Temple & Workman*, had levied upon the cattle; that plaintiff had demanded the possession thereof; but the demand had been refused, and the defendant unlawfully withheld the cattle from the possession of the plaintiff, etc.

The defendant, Alexander, answered, admitting the seizure under the writ; alleging that after the commencement of the action, E. F. Spence and D. Freeman, as assignees of Temple & Workman, had commenced an action against him as Sheriff for the same property, and that thereafter, on the 15th day of May, 1876, at the request of all the parties in interest, made by stipulation in writing, he had turned the property over to Freeman and Spence to abide the result of pending litigation.

The stipulation was signed by the attorneys for A. B. de Baker, and D. W. Alexander for Freeman and Spence, assignees, and for A. M. W. de Temple. It was dated May 15th, 1876, and was as follows: " It is hereby stipulated that the property attached in the above entitled cause (*Baker* v. *Temple & Workman*) may be taken in charge by D. Freeman and E. F. Spence, assignees of F. P. F. Temple, and Wm. Workman, and Temple & Workman, *subject to the final judgment in the above case*, and the cases of *Freeman & Spence* and *A. M. W. de Temple* v. *D. W. Alexander*, and *A. M. W. de Temple et al.* v. *D. W. Alexander*, pending in said Court, and for purposes of trial all of said actions be consolidated."

Subsequently the minors, by their guardian *ad litem*, Wm. Temple, filed complaints designated "complaints in intervention," setting up the same cause of action. Thereafter, without the consent of any of the parties to this action, Freeman and Spence sold the property, and did not account to them for the

proceeds, but dismissed their action against the Sheriff. Judg-ment was rendered in favor of the minors and the plaintiff, and the defendant appealed.

*Thom & Ross,* for Appellant.

The action of the plaintiff in agreeing with the other claim-ants of the cattle that the Sheriff should turn them over to Freeman and Spence, assignees of Temple & Workman, (and also claimants) to be by them taken in charge *and held* subject to the result of the actions concerning the property, relieved the officer of all liability; and if the parties so selected have been unfaithful and disposed of the property, the remedy is against them and not against the officer.

The law upon the proposition is very clearly stated in the case of *Donham* v. *Wild,* 19 Pick. 521–2. The Court there says:

"The officer who attaches personal property is bound to keep it in safety, so that it may be had to satisfy the execution which may follow the attachment. This duty he may perform himself, or by the agency of others. If he appoint an unfaithful, or intrust it with an irresponsible bailee, so that it is lost through the negligence or infidelity of the keeper, or the insufficiency of the receiptor, he will be responsible for the value of the property. The defendant's conduct in the present case, unex-plained, clearly renders him liable; and the only question is, whether he is exonerated by the acts of the plaintiff.

"It does not seem to us to be material whether Cushing is to be deemed *keeper* or *receiptor.*   *   *   *   An officer, in the service of writs, though bound to follow and not violate the rules of law, yet in many respects acts under the direction of the plaintiffs. They may direct him what goods to attach and he will be safe in following their orders in relation to the manner of keeping them. The plaintiff need not give any advice or directions; in which case the officer will be bound to follow the rules of law, and will be responsible for any deviation from them. *But if the plaintiff does interfere, it would be a viola-tion of the first principles of justice to authorize him to recover*

*against the officer for any loss which might result from follow-ing his advice or directions.* The officer might select the plaint-iff himself for keeper or receiptor, and if he consented to act in either capacity, and the attachment was lost by his negli-gence or misconduct, nothing can be more clear than that the officer would be relieved from his liability. *So if the officer accepts a receiptor or appoints a keeper at the request, by the ad-vice, or with the consent of the plaintiff, he, and not the officer, is responsible for the sufficiency of the one, and the fidelity of the other.*

"These principles are so obviously just and sound that di-rect adjudication in support of them can hardly be expected to be found. The most analogous cases which we have seen are those of *Hamilton* v. *Dalziel,* 2 W. Bl. 952, and *De Meranda* v. *Dunkin,* 4 T. R. 119; in which it was holden that if the Sheriff appoint special bailiffs at the request or on the nomina-tion of the plaintiff, he is not responsible for their fidelity and good conduct. In the case at bar, the defendant having, by the plaintiff's agreement, placed the property in the hands of a person who had suffered it to be removed and lost, is not liable to an action for neglecting to levy the execution upon it."

In Crocker on Sheriffs, speaking of the duty and liability of the Sheriff respecting property held by him under attach-ment, it is said:

"He may leave it with the defendant at his own risk; or *if with the assent or by the direction of the plaintiff or his attor-ney,* at the risk of the plaintiff." (Crocker on Sheriffs, secs. 436, 420; *Pugh* v. *Calloway,* 10 O. N. S. 488.)

*Brunson & Eastman,* for Freeman & Spence, argued that the Sheriff, Alexander, was liable. He was not bound to turn the property over under the stipulation, and in doing so he merely made Freeman & Spence his keepers, and they were responsible to the Sheriff alone, while the Sheriff was responsible to the plaintiff. The Sheriff's liability is for an unlawful seizure; that of his keepers is not.

*V. E. & F. H. Howard*, for Respondent.

In this action, the suit is for the specific property. The cause of action is the unlawful taking, which was the levy of the attachment and taking possession on the 8th of May. It was conversion. (2 G. Ev. 88, 642.) " When the goods have been tortiously obtained it is sufficient evidence of conversion." (*Thurston* v. *Blanchard*, 22 Pick. 20.) The attachment of the property of Mrs. Temple as the property of her husband was tortious; that no demand was necessary prior to suit, although proved. (*Morse* v. *Murdock*, 26 Cal. 524, 525.) The Sheriff is therefore bound to restore the property or its value. His liability accrued from the taking. It is no answer to say that the plaintiff agreed to a particular keeper or receiptor. The possession is still that of the Sheriff. He has a qualified property in the goods, and could have maintained suit against any third party, whether he left them with the defendant or had taken a receiptor. (Crocker on Sheriffs, p. 205, sec. 449; Crocker on Sheriffs, p. 362, sec. 828.) Sheriff can maintain an action against receiptor. (Crocker on Sheriffs, sec. 828; see, also, secs. 420, 436, 443, 782.) It is the wrongful levy of the Sheriff which originally places the goods in the hands of keepers. The receipt, or rather stipulation, in this case, only goes to the effect that the stock could be delivered to Freeman and Spence, instead of being restored to plaintiff before judgment and held by them, *pendente lite.*

It was still in the possession of the Sheriff, because in the custody of the law. It is merely a consent by the plaintiff that Freeman and Spence were proper keepers, and that the plaintiff would forego possession under the statute until after judgment.

" If the bailee of property attached by an officer misuses such property so as to diminish its value, the officer becomes thereby a trespasser *ab initio*, and is liable in trover or replevin." (*Briggs* v. *Gleam*, 29 Vt. 78; 18 U. S. Digest, p. 662, No. 34.) The Sheriff cannot take advantage of the conversion of his own bailee.

It is questionable whether the plaintiff could maintain an action against Freeman and Spence, but it is clear that the

Sheriff could. The judgment, therefore, should be against him and then he may resort to his action against them.

"The receiptor of property seized on process is not liable to the officer for non-delivery of the property to him on demand, unless the officer is liable to some one for his failure to hold or sell the property on his process; and this doctrine is applicable where such property belongs to the receiptor." (*Perry* v. *Williams*, 39 Wis. 339; U. S. Digest, vol. 7, (1876), p. 775–13.) As the Sheriff turned the property over to Freeman and Spence to hold until after judgment, he is as much a party to the stipulation as though he had signed it. It could not bind him without his consent. It was only an agreement that Freeman and Spence were proper keepers. It was as much in his custody, and that of the law, as though they had been his sole receiptors.

By the COURT:

·Had the action of A. M. W. de Temple against the Sheriff proceeded to judgment without the appearance of other parties in the controversy, it is clear that while she might have recovered a judgment *in form* against the Sheriff for the return of the cattle in ·controversy, she could not have enforced such a judgment against him. The stipulation of May 15th, united in by all of the ·then parties to the action, was intended to remove the property from the custody of the Sheriff and place it in that of keepers selected by the parties themselves; and the effect of the stipulation, followed by a delivery of the property pursuant to its terms, was equivalent to a turning over of the property, by consent, to the keeping and control of the parties to the action themselves, in which case it could hardly be claimed that the Sheriff was still to account for its value.

2. Nor do we think that the *intervention,* so called, of John and Lucinda Temple, subsequently made in the cause, operated a change of responsibility of the defendant, Sheriff, in that respect. The stipulation was still permitted to remain without objection from any quarter, and the custody of the property provided for by it was not altered or disturbed. The appearance of the new parties, John and Lucinda Temple, was not by

the way of *intervention*, though it was so denominated, but in reality by way of substitution. The action had been originally brought by A. M. W. de Temple, their mother, who did not pretend to claim for herself, but only as the representative of her children, John and Lucinda, and as having the custody of the cattle as their property. When, therefore, the children, by their guardian *ad litem*, appeared upon the record as parties litigant, they were but substituted for the then plaintiff, A. M. W. de Temple, who became thereby superseded and practically dismissed from further participation in the case as a party thereto. As substitutes for her, and as being her successors upon the record, the new parties took up the controversy in the condition in which they found it, and subject to the terms of the stipulation referred to.

It results, from this view, that the judgment in favor of John Temple and Lucinda Temple, in form entered against the defendant, was correct, but there should have been added thereto a direction that the enforcement of the judgment against the property of the defendant be perpetually stayed.

Judgment reversed, and cause remanded for further proceedings in accordance with the opinion, including the appropriate disposition of the property or its proceeds.